May it please the Court, my name is Donna Mullin. I'm an assistant attorney general representing the state in this Habeas Corpus decision appeal. Well, something has developed on the way to the forum, I suppose. We now have a decision out of the Supreme Court in Loctane. So where do you think that leaves us? Well, Your Honor, the district court granted the Habeas Corpus petition based on the retroactive application of Crawford. In Wharton v. Loctane, the United States Supreme Court said, held that Crawford is not retroactive. Therefore, this court should reverse the decision of the district court granting the writ and dismiss the petition with prejudice. Should we at that point remand to see whether there's anything else to be decided? Well, I think there are some issues. There's a Roberts claim, isn't there, a Roberts issue? There's a Roberts claim that is presented on cross appeal by the petitioner. And the state's concern is the law of the case, because the district court decided that, under the harmless error analysis, that the constitutional error based on Crawford was not, created grave doubts about the jury's decision and determined that the error was not harmless. If this court, despite the fact that Roberts' issues were not properly exhausted, were not presented to the district court, and were not in the certificate of appealability, but if this court decides that the Roberts claim should be considered, then the state argues that the district court's harmless error analysis was in error, and that the particular decision could not be applied to a correct harmless error analysis of a Roberts claim. I have basically two other arguments. First is that the law of the case. Let's go back to all your qualifications on the Roberts issue, okay? Yes. You say it wasn't exhausted. Why is that? Okay. Because before you were saying that the only thing that was exhausted was the Roberts issue. The Roberts claim that the trial court erred in admitting hearsay statements to the nurse physician and the doctor because of the reliability analysis was incorrect was never presented to the Washington Supreme Court. The issue that was presented to the Washington Supreme Court was that ---- Was the officer, Kakuta? Yes, Your Honor, the police officer, Kakuta. The issue that was presented to the Washington Supreme Court was that it was necessary for the trial court to make a competency evaluation before admitting statements under the medical diagnosis and treatment. Okay. But the language, constitutional language was used, and presumably that argument was an argument about why it wasn't reliable, so it was certainly in the ballpark. And there was a reference to the constitutional confidentiality. Absolutely. They referenced the Sixth Amendment. Okay. But the actual issue that was ---- the State says that the actual issue that was presented was much narrower. They basically, they argued that because it was presented under the Sixth Amendment, they could present Roberts claims, they could present Crawford claims, although they never presented a Roberts claim to the district court, and they certainly could have. All right. So let's go to that. The ---- what was actually in the petition was a general confrontation clause question at first, right, in the original petition. Exactly. In the district court. It didn't say whether it was Roberts, Crawford, what it was. It was just confrontation. Not until the reply brief, yeah. Right. Okay. And at the point of the reply brief, it seemed it was definitely Crawford-centered, which is at the point at which they had a lawyer. That's correct. He had a lawyer, right? And from thenceforward, there was no litigation in the district court other than under Crawford. Is that right? That's correct. And then what does the COA say? The certificate of appealability, unfortunately, also was very general. It said whether or not the admission of hearsay statements to the nurse and physician violated the Sixth Amendment confrontation clause. It did not limit the specifically or explicitly limit it to Crawford, but there were no Roberts issues ever presented to the district court. And normally, this Court will not consider claims that have not been presented to the district court. But sometimes we will. Yes. And under exceptional circumstances. And I think it has to be either a question of pure law. Isn't the Supreme Court eliminating the original theory as an unusual circumstance? I mean, at that point, they were litigating under a Ninth Circuit case law that existed. That's correct. Did it exist at the point of the reply brief? At what point was Bakhtin decided in the Ninth Circuit as compared to this case? Well, Bakhtin was decided, I believe, when we were at actually had a reported recommendation recommending that the claim was unexhausted under Crawford and was procedurally barred, and therefore, the petition was to be dismissed. There was a reported recommendation. That was the first one. Subsequently. So essentially, the petitioner made the choice to rely on Crawford and not on Roberts before the Ninth Circuit Bakhtin decision. That's correct. However, I think this Court can dismiss this petition without remanding it back to the district court based simply on the fact that the State court's harmless error analysis with regards to the statements made to the police officer were not objectively unreasonable. While the issue about the reliability of the admission of the statements to Officer Kokuda was adjudicated in the Washington Court of Appeals, it was never exhausted in the Washington Supreme Court. However, like I said, under Infothong 2254D and Brett, this Court can find that the Washington Court of Appeals harmless error analysis was not objectively unreasonable. It was based on the determination that the same hearsay statements were admitted. Well, I don't really understand how we could decide anything about harmless error until we decide if there's a constitutional violation. And so it seems to me that we would at least have to do – well, I actually have another set of questions. The Officer Kokuda material was, in fact, excluded by the Washington Court of Appeals, determined to be improper, right? That's correct. It was excluded on two bases, that there was no competency determination for the child hearsay statute, and also that it was improperly admitted under the present sentence. So why is the Confrontation Clause issue with respect to that statement even before us? It's out. We have to assume it's out, and we have to make any harmless error determination with regard to the other two statements if we were to find that they violate the Confrontation Clause on the premise that there was no Kokuda statement. But why – why has anybody – I've been baffled by this. Why are we litigating whether there was a Confrontation Clause violation with respect to a Kokuda when we already know that a Kokuda, when we already know it shouldn't have been – it shouldn't have been admitted anyway? Because, Your Honor, the State did a harmless error analysis on it. Okay. So – I'm sorry? Is it because a different harmless error standard applies? Well, they – they didn't explicitly apply the Chapman standard, but that is a standard that's applied on direct appeal. So they did apply, although implicitly, the Chapman standard of review and found that there was no harmless error. Okay. So why would we have to reach the question of whether the Kokuda statement was admitted in violation of a Confrontation Clause? Why does that matter? Well, I think that's the only claim that remains after Wharton v. Boxing, because the statements to the police officer are testimonial, so that means that a constitutional claim still remains, although we – the State argues that it was never exhausted. In contrast, the statements made by the nurse and physician were admitted under a firmly established hearsay exception. And those statements, they actually did a reliability determination on and determined that they were okay for admission. The statements made to the police officer in the Court of Appeals was adjudicated on a State law basis. They found it violated the hearsay statute, child hearsay statute, and it wasn't admissible under the special sense expression. Although it was based on State law evidentiary rules, it was not, however, contrary to Supreme Court precedent, which is one of the things this Court has to find. Nor was the harmless error analysis objectively unreasonable, so that if this Court wanted to do its – would have to find either that it was – the decision was contrary to Supreme Court precedent or that the error was – the harmless error was not objectively – analysis was not objectively reasonable. And in this case, based on the very compelling and unusual circumstance of an eyewitness to child molestation, the testimony by the sister, Jay, was actually more detailed, more compelling than the testimony that was given by the counsel. Sotomayor, let me understand the procedural posture of this case. If we were to rule against you with respect to the exhaustion issue, and we say there were – there was exhaustion, it seems to me you still have an argument that you could prevail based on the Bochting case, but would that cover the entire case, or would that be limited only to the Kakuta claim? I think that we would prevail because the statements made to the nurse physician are nontestimonial. If they're nontestimonial, there is no constitutional issue. I thought testimonial does not – is not a standard under Ohio v. Roberts. It's only a standard with regard to Crawford. Crawford now doesn't apply. Why are we talking about it? Because what I'm saying is because it – because the statements to the nurse and physician are nontestimonial, they don't survive after Wharton. There is no constitutional issue. So no matter what they – It was a Roberts issue. No. Because – because the State takes advantage of the fact that under current law, there – if it's nontestimonial, there's no – there is no constitutional issue. There is no constitutional issue. But that's not true. But it's not true, because Roberts has standards, and you still have to filter it through the Roberts standards. But only as to the claim with regards to Officer Kakuta. Why? Because the claim with regards to Officer Kakuta is currently – it is testimonial. I don't understand why it matters if it's testimonial. After Crawford, if Crawford doesn't apply, then it doesn't matter if it's testimonial. It's what – what constitutional issues survive after the Wharton decision. Right. Okay. If – after the Wharton decision, if a statement is nontestimonial – After the Wharton decision, the divide is no longer whether it's testimonial or nontestimonial. It's whether it's within a traditional hearsay exception or otherwise reliable. It's just a different cut entirely, if Roberts applies at all to this case. What does testimonial have to do with it? I don't understand. Well, what I'm saying is, is that at this point in time, that the statements that were made to the nurse and physician were nontestimonial. If they're nontestimonial under Wharton, there is no constitutional issue. Why? Then – Why is that? There's no Confrontation Clause issue because they're nontestimonial. What about Roberts? Well, Roberts has to do with the Sixth Amendment Confrontation Clause. Right. Prior to – prior to Wharton's – Which this was. Right. Because that claim still survives because it was testimonial. There is no Confrontation Clause issue unless – unless it's testimonial evidence. So if we send this back, what happens on that issue? Or I'm not sure I understand your argument here. Okay. My argument is that after the decision in Wharton – Right. Okay. And Wharton very clearly says that if – It's not retroactive. Huh? I'm sorry? Crawford is not retroactive. Crawford is not retroactive. Okay. All right. Okay? Yeah. And if the – the evidence was not testimonial, there's no constitutional issue under the Sixth Amendment. So you're – you're saying that Roberts imports the testimonial, nontestimonial standard that came in Crawford somehow? Roberts only applies at this point if there's a Sixth Amendment Confrontation Clause issue. Okay. And we can decide that at this level. We don't have to send it back for further proceedings. That's correct. Okay. All right. You've got about three and a half minutes. Why don't you reserve them, and we'll hear from the other side. Good morning, Your Honors. Good to see you again. Nice to be here. Let me please the Court. Corriendo with Nancy Kenney on behalf of Leon Miller. The legal landscape of this case has certainly changed within the last week, but the correctness of the district court's decision granting the writ has not. The fact remains that Mr. Miller was convicted. Well, to the extent that the writ was granted on the theory that Bochting was retroactive, that's now out of the case, right? I agree. I agree. I think the court decision is clear. But the constitutional violation that the court granted relief on remains. Would you lay that out for us, please? It would help me to begin just to see if I'm missing something in thinking that the whole testimonial, non-testimonial dividing line is no longer active in a case like this one. In the courts that have held that Crawford was not retroactive, the circuit courts that have addressed these habeas petitions under that assumption applied Roberts. And Roberts doesn't have a testimonial, non-testimonial divide. Roberts does not have a testimonial, non-testimonial divide. So we can forget about that divide. Those cases, actually, the state cited in its brief, cases like Mungo, a case from the Sixth Circuit, if you look at those cases, they are simply applying the Roberts test. Even though if this court considered the testimonial, non-testimonial divide before even reaching the Roberts test, we believe we win because the statements, as the state has conceded to Officer Kakuta, are testimonial. And the statements to the nurse and the doctor we also believe to be testimonial. And I'm happy to address that if the Court wants to. Sotomayor, what would be the argument for doing that? For doing that? I'm not complaining. My understanding is that Roberts, presumably, if Crawford doesn't apply, it doesn't apply in any direction. I agree. I agree. I'm not advocating that we be asked to jump through both the Crawford hoop and the Crawford test. Other circuit courts have not required that of habeas petitioners, and I don't think there's any reason. Are you saying that there was no constitutional violation with respect to the testimony of the nurse and the doctor? I'm sorry? Are you saying there was no constitutional violation with respect to the testimony of the nurse and the doctor? We believe that there was a constitutional violation in the admission of those statements to the nurse and the doctor, both under the Roberts test and under the Crawford test, if for some reason the Court wishes to address. Well, wait a minute. I thought we agreed that Crawford is no longer retroactive. I agree. Yes. So it's out of the case. Okay. All right. So we'll focus on Roberts. So what's left? So under Roberts. All right. Now, let's back up a minute about Roberts. It does seem troublesome to me that this case, while originally it would have been perfectly plausible to have raised a Roberts issue and in the alternative a Crawford issue, that isn't what happened. In the district court. In the district court, even before Bakhtin was decided. That's correct. So why don't we look at this case in which the – as one in which the Petitioner chose on federal habeas to raise one issue and one issue only, which was premised on the retroactivity of Crawford and did not undertake any – purposely didn't undertake any Roberts analysis? I could certainly understand, once Bakhtin was decided, why the focus went on the retroactivity of Crawford, but this began before Bakhtin was decided. Correct. I have a couple of comments. One is, I think Mr. Miller's claim throughout the entire proceeding has been that the conviction was obtained in violation of the Sixth Amendment Confrontation Clause rights. The case law upon which he relies is different, but the underlying claim is fundamentally the same, both here and in the district court and in the State courts. But if that dual posture had been undertaken, we would have had – presumably we would have had district court rulings on – on both postures. We would have been – had the district court's view at this point on both issues, and we could have dealt with the Roberts issue. Now – now we're completely at sea because there's been no litigation below on the Roberts issue, but there could have been. There has been no litigation below, but it is the same claim. And while the – That's an entirely different analysis, right? A different analysis, but the underlying question is the same, and the test, both the Crawford test and the Roberts test, go to whether or not the Confrontation Clause rights were – were violated or not. And in this case, they were. I think the change in the law, while the Bakhtin decision was also important in terms of his briefing below, the – the Crawford decision, which at the – was a relatively recent decision at the time, and that certainly drove the briefing, but it also did – as Your Honor recognized, Judge Berzon, in the – in his habeas petition, his claim was broad. It wasn't limited to the Roberts question. It was whether or not the conviction was obtained in violation of the Confrontation Clause of the Sixth Amendment of the United States. And that's the same exact claim that we're asking for relief now. Looking at the cases that the State has cited for the support that this is a different claim, I don't think there's a single one of those cases that actually addresses a situation like that. The closest is the King v. Roland case where the petitioner raised a conflict of interest claim in the district court and then raised a different conflict of interest claim on appeal. But there, the facts underlying those two claims were entirely different. One was whether or not his – I'm sorry, it's an ineffective assistance of counsel claim. No. It was about whether or not his counsel had failed to inquire about another confession, and then the second claim raised in the Court of Appeals was about whether the entire public defender office was disqualified. Here, the facts underlying the claims – the claim are the same. It's simply the case law upon which the test that the Court will use to determine whether or not the Sixth Amendment was violated. And so we believe that even though he did not brief it on the Roberts issue, there is no reason why this Court cannot and should not reach the Roberts issue at this point. Sotomayor, to switch gears now, the other question I asked was why, given the fact that the Washington Court of Appeals held the officer statement inadmissible, why are we retracing the ground on that question? And my posit is that it's because of the Harmless Error question, or is it because – a different Harmless Error standard, or is it because we need a constitutional violation in order to adjudicate it here? I mean, why are we retracing that? I think both. One is we do need a constitutional violation to obtain habeas relief now. And so because the Washington Court of Appeals didn't answer that question, we have really negated it just as he had in the Washington Court of Appeals. But it's because the Washington Court of Appeals used the wrong Harmless Error standard in assessing the impermissible admission of those statements that habeas relief is available. The State suggests that they actually did engage in the – use the Chapman standard, but the Court of Appeals decision at ER 198 reads, This untainted evidence was sufficient to support a finding of guilt, which is clearly not the standard that Chapman requires, which is whether the State is able to prove beyond a reasonable doubt that the constitutional error was harmless. And because the Washington Court of Appeals failed to employ that standard, mostly because they actually never reached the constitutional question that was fairly presented, this Court is able to grant relief under 2254d1. I'd be happy to turn to the merits of the Roberts analysis, if you can. Can I do so? Thank you, Your Honor. With regard to the statements to Dr. Minton and Nurse Martinez, the State is now saying that the statements do not fall within a firmly-rooted hearsay exception. The Washington Court of Appeals found to the contrary, and that's at ER 199. And under Washington rules, statements made for purposes of medical diagnosis are not considered to be firmly-rooted hearsay exception statements. This – this – So which way does that cut? It therefore requires a finding that a particular – excuse me – of particularized guarantees of trustworthiness before the statements are then admissible. But that's a Federal constitutional question. But there is an exception to Washington law, right, for medical examinations? Under Washington law, statements made by children to medical professionals are not considered to be statements falling within a firmly-rooted hearsay exception. And at ER 199 – Wait a minute. Within a hearsay exception at all or within a, quote, firmly-rooted hearsay exception? Within a firmly-rooted hearsay exception. But that's a constitutional determination, which we would make as a matter of Federal law. I think it certainly is the preliminary question that the Court has to answer in making the constitutional analysis. But it's a particular State court question in that the Washington courts are the courts that are able to assess the breadth of their rule and what falls under this exception. But they did say that this does fit under their exception. In this instance, it fell under their exception. It falls within 803a4, according to the Court. But according to the Washington Court of Appeals, even though it comes in under a3 – excuse me, 804a – under the evidentiary rule, even though it falls within that rule, that exception is not a firmly-rooted hearsay exception with regard to statements made by young children. Kagan. What is your citation for that? I don't understand what you're saying about that. At ER 199 is the State court decision. And I believe they cite a case, State v. Kilgore. I'm happy to get the site to the Court. I don't have it with me here, though. And this is – this is a question of State law, in that it's a State court decision about the breadth of the exception. And because the Washington courts – Don't we have Ninth Circuit law saying that it is a firmly-rooted exception in cases involving children? The Federal – that statements by children for purposes of medical diagnosis. But the – this is what I'm trying to say. The firmly-rooted part of it is only pertinent for Roberts constitutional purposes. Is that right? That's why we ask the question, yes. And that's why courts answer the question. Okay. So why are we bound by Washington's determination of what is a firmly-rooted hearsay exception as opposed to what's a hearsay exception? I think because it's the Washington courts that are determining the breadth of that hearsay exception. And if they interpret it in a way that's broader than the Federal courts interpret their rules, then that Washington court is also in a position to say, sure, we have a more expansive reading of the rule, but that doesn't change our constitutional analysis. We'll let these statements in, but we'll still require particularized guarantees of trustworthiness. I think this is a mixed question of fact and law about whether or not the statements fall within a firmly-rooted hearsay exception. And I believe that under this Court's precedent, we defer to the State court's finding with regard to that. As to whether or not these statements are liable, here, there are no particularized guarantees of trustworthiness. If we consider the context of the statements, Kaye makes these statements after her older sister has told her why she's called the police. She makes the statement after Officer Kakuta has engaged in this leading questions. When she makes the statement to Nurse Martina, she's in the presence of both her mother and her sister, and her sister actually interrupts and in some ways drives part of her statement to the nurse. The nurse and the doctor are both asking similar questions and essentially getting Kaye to repeat what she has said to Officer Kakuta, although the consistency between the statements is lacking. Her story changes in that she tells the nurse that Mr. Miller's pants were off, that he had unbuttoned her pants, that she went to go get ice cream and ate the ice cream in the interim. So in that regard, the statements are not consistent, which also cuts against the finding of a guarantee of trustworthiness. In addition, it's also important to remember that there was no finding that Kaye was confident at the time that she made the statements, no finding that she understood the importance of telling the truth in these situations or what the implications of telling a lie would be. As for the application of Roberts to the statement by Officer Kakuta, these statements are also not reliable. Again, there's no finding that Kaye was confident. Jay had instructed Kaye as to why she had called the police. In Officer Kakuta's own testimony, Kaye was scared of him. She was timid. She seemed unsure. The officer had no training in interviewing young children, and he asked leading questions of Kaye, such as, did someone touch your private parts? Was that in the front or the back? And it was only a response to these leading questions that Kaye made. Kagan. Ginsburg. If we thought that the Kakuta statements were improper but that the others were not, then we would be basically to the harmless error question that was decided below, essentially exactly the same circumstances despite the change in law.  So I'm having trouble with that because here we have a circumstance. At that juncture, you would have a statement by the doctor, a statement by the nurse, and an eyewitness. Why, then, is this one additional statement enough to meet a BRAC standard? With regard to Jay's testimony, her statements were inconsistent and changed over time. She originally said that she wasn't certain whether or not Mr. Miller's pants were under Kaye's shorts or whether they were over. Her testimony at trial, however, was that she was certain she was impeached and was not a certain witness in many regards. She admitted to having spoken with numerous people prior to testifying in court. And I think if we look at the States' reliance on that. Kagan had a pretty consistent story from the moment, and she called 9-1-1. She called 9-1-1 again. She told them a story. She spoke to the police. She told them a basic story. Whether the details changed lately, she still had the same basic story from day one. Well, I think the fundamental detail that's important here is whether or not Mr. Miller's hand was under or over the clothing, which is a critical issue under Washington law, in that if there's not testimony that the hands were under the clothes, then there's an additional finding of sexual gratification that's required. Moreover, I think if we look at the States' reliance upon the statements during the trial, it's clear that they were important to the State. The prosecutor noted in closing, we have Kaye talking to Officer Kakuda. We have her telling Officer Kakuda, making a statement, and emphasizing the timing of that incident, that it was within a half an hour of Jay calling 9-1-1. But when were the nurse and doctor? They, I think Officer Kakuda or Officer Mosman transported them to the hospital. It wasn't days later or anything. No, no. It was several hours later. But it was the State's reliance. The State found that to be important and persuasive and emphasized that for the jury. They also emphasized his experience as a law enforcement officer and noted that he'd had dealings with children as a law enforcement officer, and so it's his position that adds increased import to the statement that Kaye made to Officer Kakuda. They note, but again, he's a professional officer asking the questions he needed to ask. You will hear his testimony, and you will hear him testify as to what Kaye told him on that day. So I guess it's both his status as a law enforcement officer, the timing of the statement, and the State's emphasis on that, that supports the district court's decision that, in fact, this was error under Brecht. And I would note the district court applied the Brecht standard. The United States Supreme Court has recently granted cert as to whether or not that's the correct standard to apply where the State court has failed to address the harmless error analysis. They granted a review in a case Frey v. Plyler out of this Court. So we would ask that the Court affirm the decision of the district court, because Mr. Miller was never given the opportunity to confront these key witnesses against him, and because, as Judge Peckman found, this violation had a substantial and injurious effect on the jury's verdict. Thank you, Counsel. No further questions. Thank you, Counsel. We'll hear from the State. The State has some reserve time. The first thing I'd like to comment on is that the fact that a claim under Crawford and a claim under Roberts are two completely different legal theories. They are not just different cases. They're different legal theories, and as Your Honor mentioned, they require a completely different analysis. Well, then why were you telling us that we have to decide the testimonial question and that that answers the question? I was really confused. Well, actually, the issue of whether it's testimonial or not goes to whether or not a claim can be decided or still survives after Wharton v. Bachman. In other words, the State can take advantage of the fact that Wharton v. Bachman says it's not – it's not – Crawford's not retroactive, and it doesn't apply to non-testimonial statements. So if the – for example, the State court had found Well, you're claiming that you can take advantage of Crawford so that we – so essentially you're arguing that they can't get the whole Roberts rule. They can only get part of it. That's what you're saying. That's correct. The State can get the benefit of the ruling, and the habeas petition does not. And that has been discussed in Lockhart v. Fretwell, 506 U.S. 838, where it talks about how the State can benefit from a Teague analysis, where the petitioner does not. But the petitioner has no interest in finality of a State court judgment, and therefore no claim that they have a reliance on past State court precedent. So only if there's a constitutional issue that currently remains will you go back and do a Roberts analysis. If it was non-testimonial evidence, you wouldn't bother to – if it was non-testimonial after Wharton, then there's no confrontation clause issue, and there would be no Roberts analysis. In this case, what we're arguing about the statements to the nursing physician. I think it's also important for this Court to know, although the State court originally determined that the statements to the police officer were not admissible under the child hearsay statute, that particular case was overruled two years later, and the court has determined, the State court has determined, that competency is not a necessary requirement for the child hearsay statute. Therefore, under current law, the statements that made to Officer Kokuda would not have violated the child hearsay statute. They would have been admissible, and they would have been admissible under the confrontation clause. Kagan. Do you have a comment, because you're just a bit out of time, on the question of whether, if we were doing a straight Roberts analysis, the fact that the State says that this is not a firmly-rooted exception is binding on us? No, it is not. The issue is a constitutional issue. It's whether or not under Federal law, under United States Supreme Court precedent But suppose Washington just didn't have a medical examination exception, or Washington just doesn't have one. Presumably, we wouldn't then turn it. But it allows some other reason, hearsay testimony. We presumably could not turn around and say, well, it's all right because there's a firmly-rooted exception for medical examination testimony, even though Washington doesn't recognize one. I'm sorry, Your Honor. I'm not sure what my question is. I think you're out of time, so we'll worry about it later. Okay. Thank you very much, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Berzon, Haddon